### EDITH JUCKER *v.* UELI JUCKER
### (10625)

PETERS, HEALEY, PARSKEY, GRILLO and COVELLO, Js.

Argued March 2—decision released July 19, 1983

*James A. Plessinger,* for the appellant (plaintiff).

*Christopher F. Droney,* with whom, on the brief, were *Hubert J. Santos* and *A. Susan Peck,* for the appellee (defendant).

Covello, J. This is an appeal from the denial of the plaintiff's motion to open a judgment of dissolution in full or in part on the grounds of fraud. The court concluded that the plaintiff had not presented clear proof of the fraud and further that she had failed to use due diligence to discover and expose the alleged deception at the original trial. We find that there is an adequate factual basis for the conclusions reached by the court, that its conclusions of law were legally correct and we therefore find no error.

On January 28, 1977, the parties' twelve year marriage was dissolved. At the time of the decree, the court approved the parties' agreement concerning custody, alimony, support and the division of their property.

The court awarded custody of their three children to the plaintiff, ordered $100 per week alimony and $30 per week support for each child, ordered the defendant to maintain medical insurance for the children, together with his assumption of any unreimbursed medical and dental expenses, directed the transfer of a family automobile to the plaintiff and ordered the conveyance of the family home to the plaintiff. In consideration of this latter transfer, the plaintiff was ordered to pay the defendant $10,000 on November 18, 1985, or sooner in the event of her death, remarriage or sale of the house. Finally, the court ordered the defendant to maintain life insurance for the benefit of the children until they reached age eighteen.

On August 18, 1980, the plaintiff moved to open the judgment in full or in part. The motion alleged the defendant's fraudulent misrepresentations in connection with his answers to a motion for disclosure and production dated June 25, 1976, and in his sworn finan-

cial statement filed with the court and dated January 27, 1977.[1] On November 24, 1980, the court conducted a full hearing on this motion.

The gravamen of the plaintiff's claim was that the defendant failed to disclose (1) the existence of a Swiss savings account; (2) the fact that he had a personal accountant; (3) his ownership of a 50 percent interest in the stock of Jucker and Peace, Inc., a closely held corporation; (4) a 60 percent vested interest in a pension and profit sharing plan provided by that corporation; (5) his actual income for 1976; (6) his ownership of business real property in East Windsor; (7) the rental income derived from that property; and (8) the fact that he was self-employed.

"With . . . judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support." (Citations omitted.) *Baker* v. *Baker,* 187 Conn. 315, 322, 445 A.2d 912 (1982). " 'Under our statutes, a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement agreement is "fair and equitable under all the circumstances." General Statutes § 46b-66. [To this end] [t]he presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. *Monroe* v. *Monroe,* 177 Conn. 173, 183–84, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).' " *Baker* v. *Baker,* supra, 321–22.

---

[1] Practice Book § 463 provides in relevant part that "[a]t the time a motion concerning alimony, support or custody is filed, or at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement substantially in accordance with Form 501.1 of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income."

Pivotal to the validity of such an inquiry is the absolute accuracy of the financial information furnished by the parties to one another and to the court. "A court is entitled to rely upon the truth and accuracy of sworn statements required by § [463] of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." *Casanova* v. *Casanova,* 166 Conn. 304, 305, 348 A.2d 668 (1974). It follows, therefore, that a judgment rendered by the court with consent of the parties may be subsequently opened if it is shown that the stipulated settlement was obtained by fraud or intentional material misrepresentation. Cf. *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980); *Sparaco* v. *Tenney,* 175 Conn. 436, 437–38, 399 A.2d 1261 (1978).

Although the law will intervene to insure that substantial justice is done where fraud has been perpetrated, the frequency and extent of this intervention must be tempered by a sometimes conflicting adjudicative proposition that mandates the ultimate conclusion of all legal controversy. Thus, the setting aside of a judgment on the basis of fraud "will only be granted if the [movant] is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence . . . in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540–42; [note,] 36 Ill. L. Rev. 894, 896–97 (1942)." *Varley* v. *Varley,* 180 Conn. 1, 4, 428 A.2d 317 (1980).

Having heard the parties and reviewed the documentary evidence, the trial court here concluded that there was no clear proof of fraud, i.e., deception practiced in order to induce another to part with property or to surrender some legal right. *Alexander* v. *Church*, 53 Conn. 561, 562, 4 A. 103 (1886). Further, the court found a lack of diligence in trying to discover and expose the fraud.

With respect to the various claims of the plaintiff, our examination of the record discloses the following: (1) The plaintiff testified that she knew of the Swiss bank account at the time of her marriage and that it still contained a substantial amount at the time of the divorce. (2) The parties' joint 1976 federal income tax return, which was signed by the plaintiff, prominently indicates that it was prepared by an accountant. (3) The name of the defendant's employer was disclosed to the plaintiff as Jucker and Peace, Inc. Further, the plaintiff worked for this corporation and was furnished a statement of the financial condition of this corporation. (4) Although there was testimony that the defendant, an electronic systems design engineer, had little knowledge of his pension program, he responded in answer to a request in the motion for disclosure concerning the method used to adjust his compensation that an annual adjustment consisted of "bonus and contribution to employee benefit programs." (5) Both the plaintiff and her attorney testified that they had not relied on the weekly income figure shown on the defendant's financial affidavit but had added in annual bonuses in negotiating the support and alimony figures. (6) Finally, Neil Begley, the accountant for Jucker and Peace, Inc., testified that the business real estate was purchased with pension funds lent to the partners and that title was taken in the individual names of Messrs. Jucker and Peace. The "rent" was returned to the pen-

sion plan as interest on the money loaned to the partners to purchase the property and the entire arrangement was established only for tax purposes. The defendant testified that he did not understand the arrangement and the fact that title to the land was held by a partnership. Further, a copy of the 1976 joint income tax return furnished to the plaintiff shows income to the defendant from the real estate partnership.

"A factual finding may be rejected by this court only if it is 'clearly erroneous.' Practice Book § 3060D." *Kaplan* v. *Kaplan,* 186 Conn. 387, 392, 441 A.2d 629 (1982). The evidence bearing on the factual matters of the defendant's intent and the plaintiff's exercise of due diligence adequately support the conclusions drawn by the court. "It cannot be said, therefore, that the finding was as a matter of law unsupported by the record, incorrect, or otherwise mistaken. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [181 Conn. 217, 222, 435 A.2d 24 (1980)]. This court may not substitute its own opinion . . . for the factual finding of the trial court." *Kaplan* v. *Kaplan,* supra.

There is no error.

In this opinion the other judges concurred.