CAROLE ANN MASTERS *v.* SAMUEL
SAUNDERS MASTERS
(12846)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued June 4—decision released August 12, 1986

*Bruce S. Beck,* for the appellant (defendant).
*Carole Ann Masters,* pro se, the appellee (plaintiff).

PETERS, C. J. The principal issues in this appeal are the validity of a separation agreement allegedly procured by fraud and the enforceability of one provision in that agreement authorizing arbitration for disputes over child support. The plaintiff, Carole Ann Masters, and the defendant, Samuel Masters, were granted a decree dissolving their marriage on June 2, 1983. Subsequently, when a dispute arose over the defendant's compliance with the terms of the child support provision contained in a separation agreement which had been incorporated into the judgment, the plaintiff, pursuant to another provision of the agreement, filed a demand for arbitration. Following a hearing, the arbitrator entered an award on January 16, 1985, granting the plaintiff most of the relief she had requested. The defendant then filed a motion to vacate the arbitration award, which the trial court denied on March 4, 1985. The defendant has appealed from the denial of this motion.[1]

---

[1] At the time the trial court denied the defendant's motion to vacate the award, it simultaneously granted the plaintiff's motion to confirm the

The underlying facts are undisputed. In early 1983, in preparation for a mutually agreed-upon divorce, the plaintiff and the defendant contacted an attorney for assistance in drawing up a separation agreement.[2] This agreement, signed by both parties on May 31, 1983, provided for a distribution of assets, joint custody of two minor children, the payment of various expenses relative to the children's upbringing, and the arbitration of "[a]ny controversy or claim arising out of our [sic] relating to [the] agreement or the breach thereof."

Two days after the signing of the agreement, the plaintiff, herself an attorney, and the defendant's attorney appeared before the trial court, *Kelly, J.*, for a hearing on the dissolution action. The trial court expressed concern that the separation agreement appeared to provide that the children would have separate residences, the son to live with the defendant and the daughter to live with the plaintiff. In response to the court's inquiry, the plaintiff testified that it was the parties' intention to continue to share the family residence with the children for "as long as we are able to continue that relationship," and to "do everything to prevent separating the children." At the request of the defendant's attorney, the court then passed the matter to permit the parties to amend the agreement to provide for a common primary residence for both children.[3]

---

award. The defendant has appealed from both rulings under the authority of General Statutes § 52-423 which provides: "Sec. 52-423. APPEAL. An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

[2] This attorney officially represented only the defendant in the dissolution action, while the plaintiff, also an attorney, appeared pro se. The defendant claims, however, that the attorney actually advised both parties on the composition of the separation agreement. Throughout this opinion, we shall refer to this attorney as the defendant's attorney.

[3] The parties had also failed to submit to the court a sworn financial statement, and the court indicated that it intended to pass the matter to permit the parties to prepare one.

During the recess, the parties inserted a sentence into the agreement stating that "the primary residence of both children shall be with the wife." When the parties returned to court shortly thereafter, the trial court found the amended agreement to be fair and equitable. See General Statutes § 46b-66.[4] The court then rendered judgment dissolving the marriage, granting the parties joint custody of the children with their primary residence with the plaintiff, and incorporating the provisions of the separation agreement into the judgment.

Immediately after the hearing, the parties, without the court's knowledge, inserted yet another sentence into the agreement deleting the earlier reference to the children's primary residence. Approximately one month later, the defendant and the minor son moved out of the parties' joint home, where the plaintiff and the minor daughter continued to reside.

In September, 1984, the plaintiff filed with the American Arbitration Association a demand for arbitration, claiming that the defendant had failed to comply with provisions of the agreement relating to child support,

---

[4] "[General Statutes] Sec. 46b-66. (Formerly Sec. 46-49). REVIEW OF AGREEMENTS; INCORPORATION INTO DECREE. In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

alimony, and property division. Following the trial court's denial of the defendant's motion for an injunction staying the arbitration, an arbitration hearing was held on December 13, 1984. On January 16, 1985, the arbitrator entered an award granting the plaintiff most of the relief she had requested. The defendant subsequently moved, pursuant to General Statutes § 52-420, to vacate the award, claiming that the underlying separation agreement had been procured by fraud and that the arbitrator had exceeded his powers.[5] After a hearing on March 4, 1985, the trial court, *Kelly, J.,* denied the defendant's motion, holding that the defendant had not "shown [anything] that would . . . suggest that the Court should not confirm the award."

On appeal from this ruling, the defendant raises three claims of error. He claims that the trial court should have vacated the arbitration award because: (1) the court's approval of the underlying separation agreement on which the award was based had been procured by fraud; (2) the disputed issues relating to child support were not properly arbitrable as a matter of law and public policy; and (3) the arbitrator had exceeded his authority by issuing an award which did not conform either to the submission or to the agreement. We find no error.

I

The defendant first claims that the trial court erred in refusing to vacate the arbitration award because the court's approval of the underlying separation agreement had been induced by the parties' "fraudulent misrepresentation" that the children would share the same

---

[5] The defendant also claimed that the arbitrator had "imperfectly executed his power" and that he had "failed to consider or take into account the reasons for the Defendant's failure to pay" the disputed expenses. The trial court also denied the motion based on these grounds. The defendant has not pursued these claims on appeal.

primary residence. The defendant argues that, as a result, the entire underlying agreement should be voided, and the arbitration award which was premised upon that agreement should be declared a nullity. The defendant first raised this claim in a motion for an injunction to stay the arbitration proceedings, and again in a motion to vacate the arbitration award. Both motions were denied.

Details of the alleged fraud were brought to the court's attention during the March, 1985 hearing on the defendant's motion to vacate the award. At this hearing, the defendant testified that the parties had never intended the children to live together after the dissolution of the marriage. He stated that the parties' contrary representations to the court and their amendment to the original agreement had been motivated solely by their desire to obtain court approval of the agreement in the face of the court's express reluctance to separate the children. He argued therefore that, since the court's approval of the agreement as fair and equitable; see General Statutes § 46b-66; *Costello* v. *Costello,* 186 Conn. 773, 776, 443 A.2d 1282 (1982); *Hayes* v. *Beresford,* 184 Conn. 558, 567–68, 440 A.2d 224 (1981); had been predicated on a false assumption, the entire agreement should be voided. The trial court denied the defendant's motion, holding that, even if the alleged misrepresentation to the court was sufficient to vitiate the primary residence provision, it did not affect the agreement as a whole or the individual unrelated provisions at issue in the arbitration.

On appeal, the defendant claims that the trial court's ruling is erroneous both in its holding that the alleged fraud had not vitiated the agreement as a whole, and in its finding that the provision concerning the children's residence was unrelated to the support provisions at issue in the arbitration proceedings.

We begin our analysis of the defendant's claim by agreeing with his basic proposition that any intentional misrepresentation made in the context of a court proceeding is a serious matter with potentially serious repercussions. We have frequently stated that the trial court's ability to conduct a meaningful inquiry into the substance, fairness, and equity of a separation agreement depends upon the "absolute accuracy of the . . . information furnished by the parties to one another and to the court." *Jucker* v. *Jucker,* 190 Conn. 674, 677, 461 A.2d 1384 (1983); *Baker* v. *Baker,* 187 Conn. 315, 321–23, 445 A.2d 912 (1982); *Monroe* v. *Monroe,* 177 Conn. 173, 183–84, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We do not take lightly, nor can we, any misrepresentation or concealment of essential information upon which the trial court must rely in fashioning a decree; *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980); *Casanova* v. *Casanova,* 166 Conn. 304, 305, 348 A.2d 668 (1974); and have not hesitated to order an opening or modification of a judgment induced by fraud when the circumstances have warranted it. See *Jucker* v. *Jucker,* supra, 677; *Baker* v. *Baker,* supra, 323; *Kenworthy* v. *Kenworthy,* supra, 131; *Varley* v. *Varley,* 180 Conn. 1, 4, 428 A.2d 317 (1980).

Nevertheless, not every allegation of fraud is sufficient to justify the setting aside of all or part of a separation agreement. *Jucker* v. *Jucker,* supra, 677–78. In this case, for the defendant to prevail on his claim, he must establish first, by clear and satisfactory proof; see *Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982); *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); that a fraud was perpetrated on the court, and then, if so, that this fraud induced the trial court to approve the agreement. *Jucker* v. *Jucker,* supra, 677; *Varley* v. *Varley,* supra, 4.

The defendant contends that the first requirement has been satisfied by the trial court's finding of fraud at the hearing on the motion to vacate. A review of the transcript of the hearing as a whole, however, reveals that, contrary to the defendant's assertion, the trial court made no express finding of fraud. Although at several points the court did discuss the ramifications of such a misrepresentation, most of the references to fraud were couched in conditional or hypothetical terms. Significantly, the trial court ruled on the defendant's motion before the plaintiff had even presented her side of the case.[6]

The defendant appears to suggest that his testimony at the hearing, in which he admitted that the parties had intentionally deceived the court, was sufficient to establish fraud on the part of the plaintiff. In fact, the defendant's testimony established nothing more than that *he* had intended to deceive the court. It would be bizarre indeed if the defendant were permitted to profit from his admittedly duplicitous behavior by escaping his obligations to support his children. See *Hooker* v. *Hooker,* 130 Conn. 41, 50–51, 32 A.2d 68 (1943). It is important to note that the plaintiff has never admitted an intent to deceive the court. On the contrary, at oral

---

[6] During the hearing on the defendant's motion, the trial court impliedly indicated that, since it considered the provision concerning the children's residence to be severable from the agreement as a whole, it did not have to determine whether a fraud had been committed, or if so, by whom. The Court: "Well, I . . . I agree, and I think that if the issue today was whether or not Mrs. Masters is to be held in contempt for failure to allow that child to reside with her, *I'd want to know all these things.* And I'd want [the defendant's former attorney] here. But I don't think that's the issue today." (Emphasis added.) Consequently, the court made its ruling without any testimony from either the plaintiff or the defendant's former attorney. The defendant characterizes one sentence in the course of the entire hearing as a "finding" of fraud. The preceding and subsequent discussion indicates, however, that the trial court specifically refrained from making a finding on this issue, and instead merely assumed fraud arguendo as a prelude to denying the defendant's motion on the grounds of severability.

argument before this court, the plaintiff presented an explanation for her actions which differed dramatically from the defendant's version, and this explanation was consistent both with her testimony at the dissolution hearing and with the conduct of the parties immediately thereafter.[7] Since the trial court ruled on the defendant's motion before the plaintiff had had an opportunity to deny the defendant's allegations, and since the alleged fraud revolved around the parties' future intentions rather than around readily proven facts, we have no way of reconciling the conflicting versions. Our resolution of the second part of this claim, however, makes it unnecessary for us to resolve this issue. Accordingly, we will assume arguendo, as did the trial court, that the defendant satisfied his burden of establishing that a fraud had been perpetrated on the court.

The trial court held that any fraud which may have occurred applied only "to the narrow issue of principal

---

[7] The plaintiff claimed at oral argument that it was her belief and intent that the parties would continue to share the family home with the children after the dissolution, and that she was surprised when the defendant moved out several weeks later in order to remarry. She stated at oral argument that she had agreed to delete the residency provision at the defendant's urging with a mutual understanding that this action would have no effect on the court's judgment. The plaintiff had also testified at the dissolution hearing that the parties intended to remain in the family home, for "as long as we are able to continue that relationship." The defendant conceded at the hearing on his motion to vacate the award that the parties returned to their joint home after the dissolution and continued to reside together for approximately one month until he moved out.

In his testimony at the hearing, the defendant also claimed that his attorney knew of the parties' intent to separate the children, and yet advised the parties to insert and then delete the clause concerning the children's residence in order to induce the trial court to approve the agreement. This attorney was not called as a witness to provide an explanation for his actions, and the trial court carefully refrained from making any finding concerning his alleged participation in the deception. This opinion is not to be construed as condoning the attorney's actions, if the defendant's allegations are true, nor do we foreclose the possibility of further inquiry into his conduct in the proper forum.

residence of the child[ren]," and did not vitiate either the agreement as a whole or the specific provisions at issue in the arbitration. In reaching this conclusion, the court found that the clause allegedly tainted by fraud was severable from the rest of the agreement. Since the provision concerning the children's residence was separate and distinct from the provisions at issue in the arbitration, the court rejected the defendant's argument that the arbitration award should be vacated on this ground.

It is important to note at the outset the procedural posture in which this claim was presented to the trial court. The defendant did not move to open the judgment in full or in part on the ground of fraud. See *Lucisano* v. *Lucisano,* 200 Conn. 202, 206, 510 A.2d 186 (1986); *Jucker* v. *Jucker,* supra, 675. Instead, he raised his claim of fraud solely in the context of his opposition to the arbitration proceeding and subsequent award. In denying the defendant's motions, the trial court thus focused primarily on the relationship between the provision establishing the children's residence and the separate and distinct provisions at issue in the arbitration. Although it is beyond dispute that the trial court has the inherent power to open, sua sponte, a judgment which has been procured by fraud; *Baker* v. *Baker,* supra, 323; *Kenworthy* v. *Kenworthy,* supra, 131; it was entirely proper for the court to consider the issue before it in the context in which it was raised. Consequently, our review of the trial court's ruling will take place in the same context.

It is a basic principle of law that the invalidity or illegality of one provision in a separation agreement will not necessarily defeat the agreement as a whole. Clark, Law of Domestic Relations (1968) § 16.5, p. 534. "[A]s long as the invalid portions of an agreement are separable from the valid portions, the valid portions remain viable . . . ." 2 Lindey, Separation Agreements and

Ante-Nuptial Contracts (1986) p. 33-1; *Ferro* v. *Bologno,* 31 N.Y.2d 30, 36, 286 N.E.2d 244, 334 N.Y.S.2d 856 (1972); see *California State Council of Carpenters* v. *Superior Court,* 11 Cal. App. 3d 144, 157, 89 Cal. Rptr. 625 (1970).

When the issue of severability is raised in the context of a fraudulent misrepresentation concerning one provision of a separation agreement, the rule remains the same: if the fraudulently induced provision can be severed from the rest of the agreement, then only that provision will be invalidated or modified. *Baker* v. *Baker,* supra, 323 n.7 (fraud concerning financial information did not affect the validity of the judgment concerning custody or support of the children); *In re Marriage of Madden,* 683 P.2d 493, 494–96 (Mont. 1984) (fraud in financial provisions resulted in modification of property division only, not child custody provision); *Lopez* v. *Lopez,* 63 Cal. 2d 735, 738, 408 P.2d 744, 48 Cal. Rptr. 136 (1965) (fraud in property provisions permitted a modification of the affected sections only, not of the judgment as a whole). The issue before us, therefore, is whether the trial court erred in finding that the alleged fraud concerning the children's residence affected only that individual provision, or whether, as the defendant argues, it vitiated the entire agreement.

We conclude that the trial court did not err in deciding that neither the agreement as a whole nor the provisions at issue in the arbitration had been tainted by the alleged fraud. In reaching this conclusion, we attach special significance to the fact that the trial judge who presided at the hearing on the defendant's motion to vacate was the same trial judge who had presided at the dissolution proceeding. While the defendant may speculate about the importance of the residency provision to the trial court's approval of the entire separation agreement, the trial judge who approved that

agreement obviously possessed special insight into the relative weight he attached to each provision. His conclusion that the remaining portions of the agreement were unaffected by the alleged misrepresentation is strong evidence that approval of the agreement in toto was not inextricably linked to the provision concerning the children's residence.

This conclusion is buttressed by an examination of the agreement itself. The terms of this document express an intent on the part of the plaintiff and the defendant to divide their assets evenly, to split the ordinary expenses occasioned by childraising,[8] and to share the decision-making responsibilities connected with their children's upbringing. There is nothing in the agreement to suggest that any of these provisions depended on the location of the children's residence. On the contrary, all of these terms appear equally viable regardless of the actual residence of the children. In fact, we are hard-pressed to imagine what changes the trial court might have made to the remainder of the agreement if it had been aware that the parties planned to provide separate residences for the children.[9] The trial court could reasonably have found the remainder of the agreement to be fair and equitable despite a misrepresentation of intent on the issue of the children's residence. We hold, therefore, that the trial court did not err in concluding that the alleged misrepresentation affected only the residency provision and did not vitiate the rest of the agreement.

The defendant's related argument that the plaintiff should be barred from enforcing the agreement because

---

[8] As discussed more fully in part II, infra, Section VIII of the agreement provided for the defendant to assume full responsibility for the children's education, child care, and enrichment expenses.

[9] The judgment as entered states that "the primary residence of both children [will be] with Carole Ann Masters." This judgment was not, of course, affected by the parties' subsequent deletion from the separation agreement of the reference to the children's residence.

she has "unclean hands" merits little discussion. In the first place, there was no clear and satisfactory proof that the plaintiff had intentionally deceived the court. More to the point, however, the defendant has admitted that he participated in the alleged fraud on the court. At best, then, the defendant has alleged collusion between the parties. Under general principles of equity in such situations, "[t]he law will leave the parties in the position in which it finds them." *Hooker* v. *Hooker,* supra, 51; see *Hall* v. *Hall,* 455 So. 2d 813, 815 (Ala. 1984). We decline to permit the defendant to profit from his admitted fraud by avoiding his responsibilities under the agreement.

## II

The defendant next challenges the legality of submitting to arbitration disputes concerning the payment of educational and child care expenses. Under Section VIII of the separation agreement, which details the parties' child support obligations, the defendant was required to "pay all expenses for both children of . . . tutoring, enrichment programs (as defined in Section VI above), vacation activities, child care . . . [and] all nursery school tuition for [the minor daughter] until she enters kindergarten." Under Section XIV, the parties agreed to submit to arbitration "[a]ny controversy or claim arising out of [or] relating to this agreement or the breach thereof. . . ." Invoking this latter provision, the plaintiff, in September, 1984, filed a demand for arbitration claiming that the defendant had "failed to pay the sums he owe[d]" relating to the daughter's nursery school and child care expenses, and to both children's enrichment expenses. Although the defendant does not dispute that the agreement authorized arbitration of these issues, he argues that such subjects are exclusively within the province of the trial court as parens patriae and are therefore not arbitrable as a matter of law and public policy. The defendant first

raised this claim in a motion to vacate the arbitration award. This motion was denied.[10]

It is important to clarify precisely what the defendant does and does not claim. The defendant does not argue that child support per se is not arbitrable, nor does he claim that the arbitrator directly considered the issue of the children's custody in fashioning his award. Instead, the defendant focuses on the provision of the agreement giving him the right to "consult and agree" with the plaintiff on matters relating to the children's upbringing.[11] According to the defendant, that provision affords him custodial rights that bear upon his obligation to pay nursery school, child care, and enrichment expenses and that require any inquiry into

---

[10] The plaintiff contends that the defendant's participation in the arbitration hearing without first having challenged the arbitrability of the disputed issues constituted a waiver of his right to object on this ground following the award. The plaintiff does not dispute that the defendant raised the question of arbitrability during the hearing on his motion to vacate the arbitration award, or that the trial court considered and rejected this objection in denying the defendant's motion. However, citing our decisions in *Schwarzschild* v. *Martin,* 191 Conn. 316, 323, 464 A.2d 774 (1983), *New Britain* v. *Connecticut State Board of Mediation and Arbitration,* 178 Conn. 557, 560–61, 424 A.2d 263 (1979), and *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 61–62, 357 A.2d 466 (1975), the plaintiff argues that the trial court should not have considered this argument by the defendant, and that we "should therefore refuse to consider [this] argument on appeal." A review of the transcript of the hearing on the defendant's motion, however, reveals that, although the plaintiff did object to the defendant's raising of the issue of arbitrability on other grounds, she did not distinctly raise the claim of waiver before the trial court. Consequently, we decline to consider it on appeal. Practice Book § 3063; *Bieluch* v. *Bieluch,* 199 Conn. 550, 554, 509 A.2d 8 (1986).

[11] Section VI of the separation agreement provides in relevant part: "VI. *CUSTODY:* The parties shall consult and agree with each other with respect to the childrens' education and religious training, summer camp and other vacation activity selection, illnesses and operations (except in emergencies), health, welfare, enrichment programs, (music, skating, dance, skiing, tennis, etc., with equipment appropriate to the level of achievement); academic tutoring; and other matters of similar importance affecting the children, whose well-being, education and development shall at all times be the paramount consideration of the Husband and Wife."

such support obligations to consider the best interests of the child in a manner resembling a custody determination. Because as we conclude a court may not delegate its judicial responsibility for the resolution of custody disputes, and because judicial review of arbitration awards is statutorily limited; see § 52-418;[12] the defendant argues that the arbitrator in this case lacked the authority to award support payments to the plaintiff.

The trial court rejected this argument. It held that the issues of support considered by the arbitrator were not "so necessarily entwined with custody and with approval of . . . the defendant that [they] deprive[d] the arbiter of jurisdiction." The issue before us, therefore, is whether the trial court erred in its conclusion that the arbitrator's determination of the defendant's support obligations under the separation agreement did not represent an unacceptable intrusion into the exclusive province of the court.

We agree with the defendant that the ultimate responsibility for determining and protecting the best interests of children in family disputes rests with the

---

[12] "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

trial court and not with the parties to a dissolution action. Although General Statutes § 46b-66 recognizes the right of private parties to enter into agreements "concerning the custody, care, education, visitation, maintenance or support of any of their children," that same statutory provision empowers the trial court to reject or modify any such agreement which it determines is not "fair and equitable." *North* v. *North,* 183 Conn. 35, 38, 438 A.2d 807 (1981). In addition, § 46b-56[13] grants the trial court continuing jurisdiction to "make or modify any proper order regarding the education and support of the children and of care, custody and visitation"; General Statutes § 46b-56 (a); according to the court's perception of the "best interests of the child." General Statutes § 46b-56 (b); *Sillman* v. *Sillman,* 168 Conn. 144, 149, 358 A.2d 150

---

[13] General Statutes § 46b-56 provides in relevant part: "(Formerly Sec. 46-42). SUPERIOR COURT ORDERS RE CUSTODY AND CARE OF MINOR CHILDREN IN ACTIONS FOR DISSOLUTION OF MARRIAGE, LEGAL SEPARATION AND ANNULMENT. ACCESS TO RECORDS OF MINOR CHILDREN BY NONCUSTODIAL PARENT. (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o. Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. The court may also make any order granting the right of visitation of any child to a third party including but not limited to grandparents.

"(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child.

"(c) In determining whether a child is in need of support and, if in need, the respective abilities of the parents to provide support, the court shall take into consideration all the factors enumerated in section 46b-84."

(1975). This judicial responsibility cannot be delegated, nor can the parties abrogate it by agreement. *Guille* v. *Guille,* 196 Conn. 260, 263–64, 492 A.2d 175 (1985); *Yontef* v. *Yontef,* 185 Conn. 275, 292–93, 440 A.2d 899 (1981); see 1 Lindey, supra, pp. 14-90, 14-168; Clark, supra, § 16.10, p. 549. In the final analysis, the court retains jurisdiction to determine and advance the best interests of the child.

The trial court's continuing jurisdiction to assure the best interests of the child does not, however, resolve the question before us. What we must decide is whether each and every postdissolution disagreement concerning child support is so centrally related to the best interests of the child that only a judge can resolve child support disputes. In addressing this question, we must recognize that conflicts frequently develop over relatively minor decisions relating to the day-to-day upbringing and support of minor children, conflicts which in reality reflect little more than a difference of opinion or preference between sometimes hostile parties. Exacerbated by the emotion charged atmosphere surrounding marital dissolutions; *Yontef* v. *Yontef,* supra, 292; such differences of opinion may quickly reach an impasse. Frequent litigation of these minor disagreements leads to frustrating court delays; *Faherty* v. *Faherty,* 97 N.J. 99, 107–108, 477 A.2d 1257 (1984); and, because of the adversarial nature of traditional court proceedings, can work to heighten tensions and engender further conflict. Philbrick, "Agreements to Arbitrate Post-Divorce Custody Disputes," 18 Columbia J. L. & Soc. Probs. 419, 422–28 (1985). Where the issues involved do not themselves impact directly on the child's best interests, judicial resolution of each disagreement has been characterized as burdensome and counterproductive. See *Faherty* v. *Faherty,* supra, 107–108; Philbrick, supra, 424–33. In such situations, therefore, we should not categorically require the parties to submit all controversies about child support to a court.

As in the case presently before us, arbitration proceedings are often represented to offer an effective and desirable alternative to judicial resolution of family disputes. Arbitration offers the disputants an informal setting, a muted adversarial tone and a speedy resolution of the issues that divide them. *Crutchley* v. *Crutchley,* 306 N.C. 518, 523, 293 S.E.2d 793 (1982); Philbrick, supra, 442–44; Spencer & Zammit, "Reflections on Arbitration Under the Family Dispute Services," 32 Arb. J. 111, 116 (1977); Holman & Noland, "Agreement and Arbitration: Relief to Over-Litigation in Domestic Relations Disputes in Washington," 12 Willamette L.J. 527, 527–28 (1976). When the best interests of children are at stake, however, these advantages must be balanced against the ramifications of limited judicial review of arbitration awards. In attempting to strike a proper balance between the two, courts and commentators have distinguished between issues relating to child custody and those relating to child support. Because determinations of custody go to the very core of the child's welfare and best interests, most courts prohibit arbitration of custody disputes. See *Nestel* v. *Nestel,* 38 App. Div. 2d 942–43, 331 N.Y.S.2d 241 (1972); 1 Lindey, supra, pp. 29-19 through 29-20; Clark, supra, § 16.8, p. 545; Spencer & Zammit, supra, 116. On the other hand, because questions of child support generally do not involve "the delicate balancing of the factors composing the best interests of the child" required in custody determinations; *Nestel* v. *Nestel,* supra, 943; a number of courts permit support disputes to be resolved through arbitration. *Faherty* v. *Faherty,* supra, 109; *Nestel* v. *Nestel,* supra, 943; 1 Lindey, supra, p. 29-18; Spencer & Zammit, supra, 116; Holman & Noland, supra, 535; annot., 18 A.L.R.3d 1264, 1269 (1968). To ensure that the court's ultimate, nondelegable responsibility to protect the best interests of the child is not shortcircuited by this process, some courts

have devised special provisions for court review, permitting a full de novo hearing under certain specified circumstances. See *Faherty* v. *Faherty,* supra, 109–10 (permitting de novo review if arbitration award adversely affects substantial best interests of child); *Sheets* v. *Sheets,* 22 App. Div. 2d 176, 178–79, 254 N.Y.S.2d 320 (1964) (permitting court review if award would have adverse affect on child).

In the present case, we conclude that the trial court correctly determined that the disputed issues were proper subjects for arbitration. These issues required a determination of the defendant's obligation under specific provisions of the separation agreement to pay his daughter's nursery school and child care expenses and to pay for both children's enrichment programs.[14] Such matters relate primarily to the defendant's support obligation. See *Hardisty* v. *Hardisty,* 183 Conn. 253, 261–65, 439 A.2d 307 (1981); *Cleveland* v. *Cleveland,* 165 Conn. 95, 98–101, 328 A.2d 691 (1973). The trial court was not bound to accept the defendant's effort to convert these questions into issues of custody. Arguably, even some child support disputes may require a best interests determination which is inappropriate for an arbitrator, but the defendant has not shown such special circumstances in this case. He has not alleged that the nursery school his daughter attended, the babysitter hired to care for her, or the enrichment programs engaged in by both children in any way adversely

---

[14] Section VIII of the separation agreement provides in relevant part: "VIII. *SUPPORT* . . . During precollege years, the Husband shall pay all expenses for both children of private school agreed upon for both children or required for either child due to extraordinary circumstances, tutoring, enrichment programs (as defined in Section VI above), vacation activities, child care and medical and dental care not paid by the insurance required hereunder to be maintained by Wife (including orthodonture, prescription drugs, corrective lenses, etc.) In addition, Husband shall pay all nursery school tuition for [the minor daughter] until she enters kindergarten."

affected the children's welfare. Had such allegations been made, the court would have been required to undertake a further examination of the merits of the dispute. See *Faherty* v. *Faherty,* supra, 109–10. Here, however, the trial court could reasonably have concluded that the defendant's refusal to pay the contested expenses stemmed solely from his failure to agree with the plaintiff over the choice of the particular school or babysitter,[15] and that such a difference of opinion about fundamentally acceptable choices did not so implicate the best interests of the children as to require a judicial decision of this support dispute. Accordingly, we hold that the trial court did not err in finding that the child support issues presented to the arbitrator were properly arbitrable.

## III

The defendant's third claim is that, in ordering the defendant to pay nursery school, child care, and child enrichment expenses in the future,[16] the arbitrator exceeded his powers as defined by the separation agree-

---

[15] The record before us does not contain the reason for the defendant's objection to the expenses. The defendant has not provided as part of the record the transcript of the hearing before the arbitrator.

[16] The arbitration award provided in relevant part:

"6. The plaintiff's current expenses for child care . . . Montessori School and enrichment programs are specifically found to be fair and reasonable and those contemplated by the parties at the time of making their original agreement, and, as such, an order of specific performance shall enter requiring the defendant to pay said expenses in the future or reimburse the plaintiff for the same within fifteen (15) days of the demand being made during the term of their Agreement.

"7. The plaintiff's other prayers for relief have been considered by the Arbitrator and are denied. Her requests for educational and vacation expenses may be renewed for expenses which are incurred in the future providing said expenses can be shown to be reasonable and providing the defendant has consented to said expenses. The defendant's consent shall not be unreasonably withheld. The defendant's withholding of consent to expenses usually afforded children of parents of similar economic situations shall be deemed per se unreasonable."

ment and the plaintiff's demand for arbitration. The defendant raised this claim in a motion to vacate the award.[17] This motion was denied.

The principles governing the arbitration of disputes are well established. Because arbitration is a "creature of contract," the parties themselves ordinarily determine the issues to be decided and define the scope of the arbitrator's power. *Administrative & Residual Employees Union* v. *State,* 200 Conn. 345, 348, 510 A.2d 989 (1986); *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 341, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983). If a challenge to an award is made on the ground that the arbitrator has exceeded his powers, "courts need only examine the submission and the award to determine whether the award conforms to the submission." *Board of Education* v. *Waterbury Teachers Assn.,* 174 Conn. 123, 127, 384 A.2d 350 (1977); *Board of Education* v. *AFSCME,* 195 Conn. 266, 271, 487 A.2d 553 (1985); *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 404, 407 A.2d 1013 (1979); *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 587–88, 392 A.2d 461 (1978); comment, "Arbitration in Connecticut: Issues in Judicial Intervention Under the Connecticut Arbitration Statutes," 17 Conn. L. Rev. 387, 406–407 (1985); note, "Judicial Interpretations and Applications of the Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 172–74 (1974).

---

[17] The plaintiff argues that this claim is not reviewable on appeal because the defendant did not distinctly raise it before the trial court. A review of the transcript of the hearing, in conjunction with the defendant's motion and memorandum in support, indicates that the defendant raised this issue with sufficient clarity to alert the trial court to the nature of the claim. Consequently, we will review the claim on appeal.

After comparing the award to the submission, we conclude that the trial court correctly determined that the arbitrator did not exceed his powers in issuing his award. The defendant argues that, because the plaintiff, in her demand for arbitration, characterized the dispute as a controversy over sums *owed* by the defendant, she was precluded from obtaining an award of future payments. The defendant, however, takes too narrow a view of the submission. Since there was a written agreement between the parties to arbitrate all disputes arising from the separation agreement,[18] the submission in the present case consisted of a composite of the authorizing clause in the separation agreement and the plaintiff's demand for arbitration,[19] including her claim for relief, in which she asked for, inter alia, "[a]n order for specific performance of the Agreement *in the future* in accordance with its terms, with payment . . . to be made: (a) by the first of each month for nursery school and child care expenses coming due that month; and (b) within ten (10) days after demand therefor in the case of all other expenses owed by [the defendant] pursuant to the Agreement."[20] (Emphasis added.) See *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* supra, 588. The disputed arbitration

[18] Section XIV of the separation agreement provides: "XIV. *ARBITRATION:* Any controversy or claim arising out of our [sic] relating to this agreement or the breach thereof shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association."

[19] In her demand for arbitration filed with the American Arbitration Association, the plaintiff describes the "nature of the dispute" as: "NATURE OF DISPUTE: Samuel S. Masters has failed to pay the sums he owes pursuant to Sections VIII and X of the above-referenced contract (the 'Agreement') despite repeated requests therefor."

The plaintiff subsequently amended this statement to include alleged violations by the defendant of Section IX and an addendum to the agreement.

[20] In her request for relief, as restated on December 13, 1984, the plaintiff also asked for reimbursement of the contested expenses, consequential damages, the return of certain proeprty and bank accounts, the payment of two dollars in alimony as provided in the agreement, arbitration fees and expenses, and "[a]ll such other relief as the Arbitrator deems justified."

award ordered "specific performance . . . requiring the defendant to pay [the disputed child care, nursery school, and child enrichment] expenses in the future . . . within fifteen days of the demand being made." It is obvious from a comparison of this provision with the plaintiff's request for relief that the award conforms to the submission.

The defendant further argues, however, that, because the separation agreement entitles him to "consult and agree" with the plaintiff over issues relating to the children's education and welfare, the award of future payments deprives him of the power to participate in childraising decisions and thereby contradicts the express terms of the agreement itself. The trial court rejected this argument at the hearing on the defendant's motion.

As the plaintiff vigorously argues, it is not at all clear that this claim is reviewable on appeal. The defendant appears to suggest that the arbitrator misinterpreted or misapplied the "consult and agree" provision in the agreement and thereby entered an erroneous award. Appellate review of arbitration awards, however, is statutorily limited to certain specific issues. See General Statutes § 52-418. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous." *Waterbury* v. *Waterbury Police Union,* supra, 404; comment, "Arbitration in Connecticut," supra, 405–409; see Domke, Commercial Arbitration (Rev. Ed. 1984) §§ 34:00 through 34:02, pp. 475–79. The instant submission contains no limitations on the power of the arbitrator to interpret the agreement. To the extent that the defendant claims that the arbitrator misapplied or overlooked part of the agreement, then, appellate

review is foreclosed. However, since this is a case involving important issues of child care and support, we will interpret the defendant's claim broadly as a challenge to the arbitrator's authority to enter the award in the first place. Accordingly, we will address the merits of the claim on this basis.

The defendant's claim is premised on the assumption that, because the arbitration order requires him to pay the specified expenses as they accrue, he is effectively precluded from having any voice with regard to these aspects of his children's upbringing, regardless of what may happen in the future. This argument, however, misinterprets both the substance and the effect of the arbitrator's award. The disputed order states that "[t]he plaintiff's *current* expenses for child care . . . [nursery school] and enrichment programs are specifically found to be fair and reasonable and those contemplated by the parties at the time of making their original agreement, and, *as such*, an order of specific performance shall enter requiring the defendant to pay said expenses in the future . . . ." (Emphasis added.) Contrary to the defendant's assertion, this order does not foreclose his right to object to these payments in the future or to suggest changes if the circumstances warrant. Instead, by its terms, the order is based on the arbitrator's determination of the reasonableness of the expenses under the facts and circumstances *as they existed* at the time of the arbitration hearing. If those underlying facts or circumstances change, the defendant has the right to object to the payment of the expenses or to suggest alternatives, and to demand a new hearing to resolve the issue as it then exists.

The fact that the award looks to the future, in this limited respect, is no more than a recognition of the nature of the disputed expenses themselves. Since nursery school, child care, and enrichment programs are ongoing, it would be impractical and burdensome to

have a separate determination of the reasonableness of the choices or expenses each time a related bill had to be paid. Consequently, the arbitrator's award can reasonably be construed as applicable only as long as the underlying circumstances support it. So interpreted, the arbitrator's award did not exceed the terms of the agreement. Consequently, the trial court did not err in denying the defendant's motion to vacate the award.

There is no error.

In this opinion the other justices concurred.