MEMORANDUM OF DECISION I. The Dissolution of the Marriage
This court finds that all of the allegations of plaintiff s complaint have been proven and that the marriage has broken down irretrievably. The marriage of the parties is consequently ordered dissolved.
The Marital Estate of the Parties
Plaintiff
Household furniture and furnishings — Personal jewelry — Savings Bank of Manchester $ 625 CT Page 2510 Le Regina — Nice. France — equity $140,306 Trust Account — Atty. Brewer — Pre marital 1,659 -------- Total $ 2,284Defendant
No. 680 Spring Street — pre-marital Manchester, CT — equity $60,450 1989 Ford Taurus 3,000 Musarati Automobile 4,000 Fumishings — premarital $15,000 Dental Equipment $10,000 Bank Accounts 5,680 Sea First Bank pre-marital $78.000 Accounts receivable 4,000 Patient files in Washington 26,000 ________ Total $42,680
III A Review of the Evidence As It Relates to Section 46b-81c C.G.S.
A. General Background Information
The plaintiff wife, who is 49 years old and the defendant husband, who is now 53, were married on December 2, 1991, eight years ago. The whirlwind continental courtship preceding this event resembled the lifestyle of those of the lost generation who trod similar paths seven decades earlier. The parties first met while skiing in the Alps in the French Swiss border in March, 1991. At the time both were dentists, she with an office for general dentistry in France and he with one in Barrington, Rhode Island where he specialized as an orthodontist. Plaintiff at that time owned an apartment in Gottier, France as well as a vacation home in Nice known by the parties "the winter place" and which she then valued at $600,000. At the time, her gross earnings were more than $300,000 annually. Defendant, while then less successful in his profession, owned at that time a house in Manchester valued at $400,000 Both parties had been previously divorced.
The parties next appear together on Fourth of July weekend, 1991 when both are described as "sailing in the Mediterranean." In November, 1991, while the parties were together in France plaintiff received $60,000 from defendant which she testified was used to pay credit card debts. Plaintiff has declared this amount CT Page 2511 to be a gift from defendant while he in turn has asserted it to be a loan to her. The romance, at any rate continued with the parties ultimately marrying at Ocho Rios on the island of Jamaica on December 2, 1991.
Following the marriage the parties resided in defendant s home in Manchester. Connecticut. Plaintiff returned to France on occasion to practice dentistry while defendant, who continued to maintain his office in Barrington. Rhode Island. also opened a second office in Seattle, Washington in late 1992. For about a year thereafter plaintiff followed the practice of assisting defendant at his office in Rhode Island for one week with the parties flying to Seattle to practice dentistry there for the following week.
In late July, 1994 plaintiff, who still resided at defendant's Manchester home learned that her father in France was in need of heart surgery Plaintiff felt that she was needed by his side at this time but, before departing executed a post nuptial agreement at the office of his attorney in Rhode Island The contents of the agreement and the facts surrounding its execution will be later discussed in detail.
Plaintiff returned home from France in September, 1994, remained there for ten days during which time she received a green card from the I.N.S. and then traveled back to France where her father had his successful surgery in October. Of at least passing interest at this point is solid evidence that plaintiff s father s net worth is in excess of $15,000,000.
Plaintiff returned to Manchester on December 15, 1994 and continued working as defendant's assistant until she instituted the present dissolution action in July, 1995.
B. The Present Employment of the Parties
1. Plaintiff
Plaintiff is presently employed as a dental assistant in Plainville, Connecticut. She states her average gross weekly income to be $590 with a weekly net income after the usual deductions of $436.
2. Defendant
CT Page 2512
Defendant's current financial affidavit indicates gross weekly earnings as a self employed orthodontist of $3000 with a weekly net after the usual deductions of $1697.
C. Health
Both parties appear to be in reasonably good health
D. Fault
Plaintiff claimed to have found women's clothing in the family home shortly before initiating this dissolution action. She also stated defendant had in May, 1994 sent flowers to one his patients.
Defendant made reference to plaintiff s having married him to obtain a green card.
The court has reviewed the evidence on this factor and concludes that such minimal fault as may exist can be evenly distributed between the parties.
E. Other Factors
The parties contributed equally to the marital estate, possess substantially the same professional skills and over the years will, in the court's opinion, have an equal opportunity for the future acquisition of capital assets and income. Plaintiff's liabilities consist mostly of legal expenses while the bulk of defendant's liabilities involve debts to his mother.
IV. The Post Nuptial Agreement
As indicated earlier, on July 22, 1994 in Rhode Island the parties executed an agreement defining their rights and obligations. The agreement stated that irreconcilable differences had arisen between the parties that they had separated and that the parties had reached an accord concerning the distribution of the marital estate and the issue of alimony. Household furniture and personal items were allocated to each party and both parties specifically waived alimony. Plaintiff also waived any interest she might have in defendant's home in Manchester and he similarly waived any right to her real estate in France.
Of special note was a provision awarding a brokerage account CT Page 2513 in Monte Carlo solely to plaintiff with her being required in return to pay defendant 50,000 French francs within one month and 90,000 French francs within thirteen months. Defendant had, in an earlier article, otherwise released plaintiff from any and all claims he might have against her
Of further significance was still another provision stating that "the parties each subject themselves to the jurisdiction of the Rhode Island family court and it shall be the venue for any divorce action which may at any future date be instituted between the parties."
The trial of this dissolution action was later bifurcated and after a two day hearing in August, 1997 the court held that "the agreement must be given effect in accordance with Rhode Island law" and that it was validly entered into by the parties. In particular it declared that there was no evidence of any fraud, misrepresentation or undue influence in any of the provisions of the agreement.
This court will first direct its attention to the question whether it is bound by the previous ruling of this court that the laws of the State of Rhode Island are applicable in this proceeding.
That it is not so bound was established in the matter of Breen v.Phelps, 186 Conn. 86, 98 (1982) wherein our Supreme Court stated that "a judge is not bound to follow the decision of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." Since this court must again consider the agreement of the parties containing the clause concerning Rhode Island law, it rules that the issue of subject matter jurisdiction may be revisited by it.
On the issue of subject matter jurisdiction the parties in their post nuptial agreement stated in Article 13 that:
 "Each submits themselves to the jurisdiction of the Rhode Island Family Court and it shall be the sole venue for any divorce action which may at any future date be instituted between the parties."
There is no proof that either party was domiciled in Rhode Island either at the time the contract was executed or when CT Page 2514 plaintiff commenced this dissolution action. Plaintiff on the evidence was domiciled in Manchester. Connecticut during these periods while defendant according to his federal tax returns and other evidence was residing either in Connecticut or Washington at those times.
The parties by their agreement are asking this court to employ the dissolution laws of a foreign jurisdiction not because they meet the jurisdictional requirement of that state, but because they have privately contracted for it. Here the full faith and credit clause is being used prospectively. This court cannot use another state s divorce law if the parties would be barred from using it were they to apply for a dissolution directly to that state. As stated by our Supreme Court: "It is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement." Hayes v. Beresford, 184 Conn. 558, 562 (1981). This court concludes on the evidence that the laws of the State of Connecticut rather than those of the State of Rhode Island are herein applicable.
The question whether the holding of this Court on Article 13 of the post nuptial agreement invalidates the entire agreement or whether the contract is severable merits at least a brief comment. In the matter of Haller Testing Laboratories. Inc. v. A.Lurie, Inc., 24 Conn. Sup. 1, 4 (1962) it was held that only by a "fair construction of the contract could there be a determination if it were severable." The Court noted that consideration was the key element. "If the consideration is single, the contract is entire but if the consideration is e, expressly or by necessary implication apportioned, the contract is severable". (Supra p. 4). The agreement before the court contains nineteen articles dealing with various property. financial, jurisdictional and status issues. Consideration is apportioned accordingly. thus mailing the contract severable under a strict contract interpretation. This court may sever the invalid portions of the agreement while maintaining the valid portions Masters v. Masters, 201 Conn. 50, 59-60 (1986). This court concludes that the invalidity of Article Thirteen has not defeated the post nuptial agreement as a whole.
The court is now faced with its ultimate task the determination whether the post nuptial agreement of the parties is now fair and equitable under all the circumstances in accordance with the provisions of Sec. 46b-66 C.G.S. CT Page 2515
In reaching its conclusion the court has reviewed all the evidence summarized in Article II, supra. It has reexamined both the exhibits submitted by the parties and their various financial affidavits submitted over the course of the litigation of this matter.
It should be stated at the onset that this court does not consider it necessary to reconsider any claim that their agreement was entered into through improper means on defendant's part or that it had been later abandoned when the parties again commenced living together. Both questions were fully litigated during the two-day bifurcated hearing. In its subsequent decision the court stated (inter alia) that there was "no evidence of any misrepresentation, fraud or undue influence underlying the provisions of their agreement" Nor did "the parties' conduct after the agreement demonstrate an interest on the part of both of them to abandon their agreement". These both were questions of fact rather than of law, and the court sees no need to revisit them. See generally Breen v. Phelps (supra)
Evidence leading to a conclusion that the agreement is fair and equitable is as follows: (a) the parties are fairly close in age, plaintiff being 49 and defendant 53: (b) their educations are substantially similar, and both have been involved in the profession of dentistry for a number of year; (c) Both parties enjoy good health: (d) the estates of both parties consist for the most part of pre-marital property; (e) The marriage is of relatively short duration, seven years, with this dissolution action pending for half that time. Defendant testified that the patties were together for 31 weeks in 1984, 15 weeks in 1994 and never in 1995.
The disparity in the comparative present incomes of the parties suggests at first blush that the agreement is not now fair to plaintiff, with defendant presently earning four times as much as plaintiff. A review of plaintiff s testimony, however, indicates that before selling her French dental practice in 1993 she had earned. at least in one year, in excess of $300,000 It was also made known that she still is able to practice dentistry in Europe and indeed in certain governmental facilities in the United States with her French license. This court must consider on this issue plaintiff's earning capacity rather than her stated income. See Miller v. Miller 181 Conn. 610, 611-613 (1988). CT Page 2516
Four other items relating to the post nuptial agreement are worthy of note:
1. Plaintiff partly carried out one provision of the agreement which was not to her benefit: i.e., she made to defendant the first payment of 80,000 French francs by August 31, 1994 and another partial payment shortly thereafter.
2. The issue of whether the $60,000 plaintiff received from defendant in November 1991 was a gift or a loan was resolved in the agreement by defendant's waiver and release of any claims he might have against her.
Lastly, the court is mindful that the agreement in plaintiff's view is not now fair and equitable and should be disregarded by the court. It is also aware that at least on the trial level some courts have held that "both parties must join in the submission of an agreement to the court before the court is obliged to determine if it is fair and equitable." See O'Neill v. O'Neill, Waterbury Superior Court, Docket Number 0101762. November 8, 1991 wherein Monroe v. Monroe, 177 Conn. 173 and Jackson v. Jackson,2 Conn. App. 179-187 are cited as authority for that holding.
This court considers the ruling in O'Neill not herein applicable because of the very nature of the agreement at issue — a post nuptial contract with a provision for future counseling together with partial performance of the agreement by the party now objecting to it, rather than an agreement to distribute the marital estate of the parties executed on the eve of a pending dissolution.
For all the reasons stated this court finds that the agreement reached by the parties on July 22, 1994 is fair and equitable, and it directs that the marital estate of the parties be divided and distributed in accordance therewith.
V. The Distribution of the Marital Estate of the Parties inAccordance with the Findings Made in Article IV supra.
 Plaintiff Shall Take and Have:
Household furniture and furnishings Personal jewelry CT Page 2517 Savings Bank of Manchester $ 625 Le Regina — Nice. France — Pre marital equity $140,306 Trust Account — Attorney Brewer 1,659 -------- $ 2,284
Defendant Shall Take and Have:
 No. 680 Spring St., Manchester. CT pre-marital equity $60,450 Masarati Automobile 4,000 Furnishings pre-marital $16,000 Dental Equipment pre-marital $10,000 Bank Accounts 5,680 Sea First Bank IRA pre-marital $78,000 Accounts Receivable 4,000 Patient Files in Washington 26,000
VI. Other Orders Relating to the Dissolution of the MaritalEstate
A. The 1989 Ford Taurus
Plaintiff in her proposed orders requests that defendant be ordered to transfer to her title to a 1989 Ford Taurus which she has maintained and repaired since 1995.
In the post marital agreement of the parties relating to personal property (paragraph 10) they, contracted that "each of the parties shall own, have and enjoy xxxxx all items of personal property xxxx which may hereafter xxxx come to the xxxx husband or the wife." The early history of this ten year old car which defendant values at $3000 is unclear but since defendant also has a Masarati it is likely that in happier days before 1995 plaintiff used the Ford Taurus as her means of transportation Defendant's proposed orders make no mention of this vehicle.
Equity demands and this court orders that title to this vehicle be vested in plaintiff. No orders are made concerning registration and insurance premiums previously paid by plaintiff.
B. Defendant shall return to plaintiff at his cost and expense such of the following items as are presently in his possession: CT Page 2518
1. Cannon AEG Camera
2. Indian Wood Chest
3. Three Chinese Arm chairs
4. Silk Vietnamese Tapestry
5. All other items of personal property of plaintiff
C. Each party shall execute all documents necessary to carry out the orders of this court.
VII. Orders Relating to the Dissolution of the Marriage
1. In accordance with the terms of Article 11 of the post nuptial agreement of the parties as well as the provisions of Sec. 46b-82
and Sec. 46b-66 C.G.S. this court orders that no alimony be awarded to either party.
2. No counsel fees are awarded to either party.
3. Each party shall be personally responsible for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard.
By the Court
John D. Brennan Judge Trial Referee February 19, 1999