EMCON CORPORATION *v.* JOSEPH P. PEGNATARO
(13649)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 15—decision released August 15, 1989

*David J. Elliott,* for the appellant (plaintiff).

*Tanina Rostain,* with whom was *David S. Golub,* for the appellee (defendant).

COVELLO, J. This is an appeal from the denial of the plaintiff's application to compel arbitration to determine the value of certain stock interests held by the defendant. We find error in the trial court's decision and remand the case with direction to order the defendant to proceed with the arbitration.

The following facts are relevant to this appeal. The defendant, Joseph P. Pegnataro, and his family owned and operated a chain of supermarkets known as "Pegnataro's." The Pegnataro stores were operated through a corporate entity, Pegnataro Super Foods, Inc., and the defendant and other members of his family owned all of the stock in the corporation.

The plaintiff, Emcon Corporation (Emcon), was also engaged in the supermarket business. During the summer of 1984, Emcon purchased 68 percent of the shares of Pegnataro, Inc., and changed the corporation's name from Pegnataro Super Foods, Inc., to Everybody's Market, Inc.

In conjunction with the stock purchase, Emcon and the defendant entered into a stockholders agreement dated July 21, 1984. The parties agreed that the defendant would continue to serve as president of the company. Under the agreement, the defendant had the right to require Emcon to purchase his stock in the event that his employment was terminated.[1] This, in

---

[1] Paragraph 3 (c) of the agreement provides: "Notwithstanding to the contrary, if at all, the foregoing subparagraphs 3 (a) and 3 (b) above, *in the event Stockholder's employment is terminated by the Corporation, he shall have the option within three (3) months thereafter of tendering his stock to Emcon in which such event Emcon shall purchase his stock* for the price and upon the terms contained herein which would apply had Emcon chosen to purchase the stock if tendered to it under the subparagraph 3 (a) above." (Emphasis added.)

Paragraph 3 (a) provides: "Stockholder shall not dispose of any shares of stock in the Corporation during his lifetime, until he has first offered in writing such shares for sale first to the Corporation and should the Corporation not agree to buy same within thirty (30) days after such offer then

commercial parlance, is called a "put." See J. Rosenberg, Dictionary of Business and Management. The agreement also contained a general arbitration clause that provided for arbitration of disputes in accordance with the commercial rules of the American Arbitration Association.[2]

On July 14, 1985, the defendant was terminated as president of Everybody's Market, Inc. On October 9, 1985, the defendant notified the plaintiff that he was exercising his option under paragraph 3 (c) of the agreement, thereby imposing upon Emcon the obligation to purchase all of his remaining shares. The parties, however, could not agree on a purchase price. On April 1, 1986, the plaintiff's attorney sent a letter to the defendant's attorney proposing to purchase the stock for $8333 per share. On April 11, 1986, the defendant rejected this proposal. Between April and December, 1986, attorneys for the plaintiff and the defendant engaged in numerous discussions and exchanged much correspondence concerning possible means of

in writing to Emcon. The offer shall be based on the price last determined in accordance with the provisions of Paragraph [6] hereof and shall be subject to the requirement that all such shares (and not less than all), shall be offered and purchased. Payment terms shall be in accordance with paragraph 7 below."

[2] Paragraph 13 of the agreement provides: "ARBITRATION. In the event of any dispute between the parties hereto as to the interpretation or application of this Agreement, such dispute shall be determined or settled by arbitration at Waterbury, Connecticut, as follows: (a) within fifteen (15) days after the filing of notice by one party to the other parties involved in the dispute hereunder, each interested party shall appoint an arbitrator. Such arbitrators shall within a further period of fifteen (15) days meet and if there is an even number of arbitrators, they shall agree upon and appoint another arbitrator. Arbitration shall proceed according to the rules for commercial arbitration of the American Arbitration Association then in effect. The arbitrators shall by majority vote determine or settle such dispute and such dispute [sic] and such action by a majority of the arbitrators shall be binding on the parties in interest, and there shall be no appeal therefrom."

resolving the disagreement over the value of the stock. No agreement was ever reached.

On January 27, 1988, the plaintiff filed in the Superior Court an amended application for an order to proceed with arbitration. In its application, the plaintiff alleged that "[d]espite repeated demand upon the defendant pursuant to [the] arbitration provisions [in the stockholders agreement,] the defendant has failed and refused to select an arbitrator and submit this claim to arbitration although the plaintiff is ready and willing to do so."

On July 13, 1988, the trial court, *Flynn, J.,* denied the application and decided "not [to] compel the defendant to arbitrate . . . [because the] application . . . was never preceded by any formal written demand to the American Arbitration Association . . . ." The court concluded that the issue of whether Emcon had complied with the procedural requirements for arbitration was a decision for the court and not an arbitration panel. The plaintiff appealed this decision to the Appellate Court and we thereafter transferred the case to ourselves pursuant to Practice Book § 4023.

On appeal the plaintiff claims that the trial court erred in deciding the issue of Emcon's compliance with the procedural prerequisites to arbitration. The plaintiff argues that this issue should be decided by an arbitration panel and not the court. The defendant, however, argues as a threshold issue that this appeal should be dismissed as moot. If this court does not dismiss the appeal as moot, the defendant next argues that the trial court correctly concluded that the plaintiff's failure to comply with the requirements for arbitration precluded the court from compelling arbitration. We conclude that this case is not moot and that the trial court erred in resolving the question of whether Emcon had met the procedural prerequisites for arbitration.

## I

The defendant first argues that under the stockholders agreement, the plaintiff has no right to compel the defendant to sell his stock because the defendant did not accept the plaintiff's offer of $8333 per share. Since no other agreement exists under which the defendant is required to sell his stock to the plaintiff, the defendant contends that any determination through arbitration of the value of the stock would be merely advisory in nature and would have no real effect. We disagree.

Paragraph 3 (c) of the stockholders agreement states with particularity that *"in the event [the defendant's] employment is terminated* by the Corporation, he shall have the option within three (3) months thereafter of tendering his stock to Emcon in which such event *Emcon shall purchase his stock* for the price and upon the terms contained herein . . . . " (Emphasis added.) Once the defendant exercised this option, Emcon was required by the terms of the agreement to purchase the stock and the price was to be determined by arbitration. The fact that the defendant did not accept Emcon's valuation proposals is of no consequence. Emcon was bound to buy the stock because paragraph 3 (c) required it to do so "in the event Stockholder's employment [was] terminated." The defendant's argument that the plaintiff failed to "accept" his offer to sell the stock, therefore, is of no avail. No acceptance was necessary.

Since the plaintiff was required to purchase the stock and since the parties are still unable to agree on the value of the stock, a justiciable question remains. This action, therefore, is not moot.

## II

The plaintiff next claims that the trial court erred in deciding that the issue of Emcon's compliance with the procedural prerequisites to arbitration was a question for the court to determine rather than for the arbitrators. We agree.

"In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls and determines whether the arbitrability of a dispute is for the court or the arbitrators. *A. Sangivanni & Sons* v. *F.M. Floryan & Co.,* 158 Conn. 467, 262 A.2d 159 [1969]." *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 122, 318 A.2d 84 (1972); see also *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 656, 539 A.2d 125 (1988). Paragraph 13 of the stockholders agreement provides that "[i]n the event of *any dispute* between the parties hereto *as to the interpretation or application* of the Agreement, such dispute *shall be determined* or settled by arbitration . . . . Arbitration shall proceed according to the rules for commercial arbitration of the American Arbitration Association then in effect." (Emphasis added.) This broad and all encompassing language evinces the parties' intent to have their disputes resolved, not by the courts but by an arbitration panel. In *Gary Excavating, Inc.* v. *North Haven,* supra, 125, we construed similarly broad language and concluded that "the appropriate body to hear claims regarding procedural prerequisites to arbitration must be the arbitration panel." In that case the arbitration clause at issue provided that "*all* claims and disputes arising under the contract or its interpretation shall be presented to the [defendant sewer commission] for decision . . . if the contractor does not agree with *any* decision of the defendant sewer commission . . . it

may then demand arbitration." (Emphasis in original.) Id., 123. We see no reason to distinguish this present case from our earlier holding.

There is error, the judgment is set aside and the case is remanded with direction to order the defendant to proceed with arbitration.

In this opinion the other justices concurred.