## BILL BUTLER ASSOCIATES *v.* NEW ENGLAND SAVINGS BANK

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 109685S
STAMFORD-NORWALK

Memorandum filed May 13, 1991

*Reid, Cafero & Corsello,* for the plaintiff.
*Green, Kleinman & Seidman,* for the defendant.

MOTTOLESE, J. The plaintiff contractor and the defendant are parties to a construction contract containing an arbitration clause that renders arbitrable "any controversy or claim arising out of or related to" the contract. The plaintiff's five count complaint claims foreclosure of a mechanic's lien, breach of contract and unfair trade practices under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff subsequently added a sixth count against the defendant's attorney, who has not yet been made a party to the action. The parties have agreed to arbitrate all counts except counts three, five and six, which all sound in violation of CUTPA. The defendant has filed a motion to compel arbitration as to those counts.

Every controversy involving the issue of arbitrability begins with the premise firmly fixed in our law that arbitration is a highly favored method of dispute resolution. " 'Because arbitration is a "creature of contract," the parties themselves ordinarily determine the

issues to be decided and define the scope of the arbitrator's power.' " *North Haven Assn. of Educational Support Staff* v. *Board of Education,* 209 Conn. 280, 283, 550 A.2d 1077 (1988). "Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531 (1967). "The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute and all claims arising out of' the contract or 'any dispute that cannot be adjudicated.' " *Board of Education* v. *Frey,* 174 Conn. 578, 581, 392 A.2d 466 (1978). Further, "[t]he 'positive assurance' test of arbitrability . . . is the law in this state. . . . 'Under the positive assurance test . . . "[a]n order to arbitrate the particular [dispute] should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' *Board of Education* v. *Frey,* supra, 582." (Emphasis in original.) *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488–89, 439 A.2d 416 (1981); *Welch Group* v. *Creative Drywall, Inc.,* 215 Conn. 464, 467, 576 A.2d 153 (1990). " 'In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls and determines whether the arbitrability of a dispute is for the court or the arbitrators. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 262 A.2d 159 [1969].' *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 122, 318 A.2d 84 (1972); see also *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 656, 539 A.2d 125 (1988)." *Emcon Corporation* v. *Pegnataro,* 212 Conn. 587, 592, 562 A.2d 521 (1989).

When these principles are applied it becomes apparent that the language of the contract in the present case is so broad as to evince an intent that questions of arbitrability are to be decided by the arbitrator and not by the court. The Supreme Court has recognized two narrow exceptions to this principle. One of these is where an inclusive judicial interpretation of the scope of the arbitration clause would violate "some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 417, 544 A.2d 186 (1988).

Whether a claim under CUTPA falls within this exception does not appear to have been decided authoritatively in this state. In *Lacey* v. *Williams,* 16 Conn. App. 711, 548 A.2d 1357 (1988), the issue was raised but not decided. In *Chrysler Corporation* v. *Maiocco,* 209 Conn. 579, 593, 552 A.2d 1207 (1989), the Supreme Court stated that "CUTPA and Magnuson-Moss logically make no specific provision for arbitrators to award attorney's fees, since both statutes are enforceable only in civil actions." In *Katz* v. *Merrill Lynch Pierce Fenner & Smith,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 362420 (January 11, 1990, 1 Conn. L. Rptr. 177), the Superior Court, *Freed, J.,* leaned in the same direction but declined to decide the issue. Thus, if CUTPA is enforceable only in a civil action, then the parties to a contract cannot delegate that function to an arbitrator. *Masters* v. *Masters,* 201 Conn. 50, 66, 513 A.2d 104 (1986).

An examination of CUTPA as a whole indicates support for the conclusion that the legislature intended that its provisions be enforceable only in civil actions. General Statutes § 42-110b (a) expresses a clear legislative intent

that construction of the terms "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" be made judicially. To the same effect is § 42-110b (d), which characterizes CUTPA as "remedial" in purpose. Additionally, several of the sections confer powers and impose duties on the commissioner of consumer protection, all designed to achieve protection for the consuming public. See, for instance, General Statutes §§ 42-110d and 42-110k.

The fact that CUTPA in actual practice has come to implicate mainly private interests in commercial settings does not obviate public policy concerns that tend to support an exclusively judicial forum. In fact, in many respects CUTPA has evolved into what might be called primarily a business tort statute. See *Genesco, Inc.* v. *T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 851 (2d Cir. 1987). Nevertheless, General Statutes § 42-110g (c), for example, mandates that a private plaintiff mail a copy of his complaint and judgment to the Attorney General. Sections 42-110g (b) and 42-110h authorize the institution of class actions to vindicate CUTPA violations including conversion of a strictly private action to a class action. Section 42-110g (a) empowers a court to order broad equitable relief in addition to actual and punitive damages. Thus, the public interest to be promoted in the remedial application of CUTPA demands that an arsenal of remedies be available to redress past and to deter future unfair and deceptive acts. The explicit disavowal of a public interest requirement in § 42-110g (a) as a prerequisite to the invocation of CUTPA protection does not militate against this principle.

Where substantial rights that are embodied in a statute express a strong public policy that policy must be enforced judicially and not through arbitration. See *Tedesco* v. *Stamford,* 24 Conn. App. 377, 380, 588 A.2d 656, cert. granted, 219 Conn. 910, 593 A.2d 1371

(1991); *Wertheim & Co.* v. *Halpert,* 48 N.Y.2d 681, 397 N.E.2d 386, 421 N.Y.S.2d 877 (1979). Accordingly, the strong policy favoring arbitration should give way to the stronger policy behind CUTPA. *Wineland* v. *Marketex International, Inc.,* 28 Wash. App. 830, 627 P.2d 967 (1981). In the opinion of this court, CUTPA and its extensive body of case law reflect a well defined and dominant public policy that should be enforced in a judicial forum rather than before an arbitral tribunal. See *New Haven* v. *AFSCME, Council 15, Local 530,* supra.

For the foregoing reasons the motion to compel arbitration is denied.