[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STAY AND PLAINTIFF'S MOTIONFOR SUMMARY JUDGEMENT ON FIRST COUNT
This case involves a suit by former employees of the defendant which is a law firm organized as a professional corporation. The plaintiffs' employment terminated in May of 1993 and plaintiffs began practicing law the next day. Plaintiffs requested payments they claimed were owing to them under a Shareholders' Stock Retirement Agreement and CT Page 8340 a Deferred Compensation Agreement which is the subject of the First Count. The defendant has refused to make payment pursuant to the Deferred Compensation Agreement.
In the first count the plaintiffs have asked the court for a declaratory judgment that the Deferred Compensation Agreement is enforceable "but that a covenant in the Deferred Compensation Agreement that restricts plaintiffs from practicing law in Connecticut is unenforceable and must be excised from the Agreement," (see October 12, 1993 brief of plaintiffs).
The defendants have filed a Motion to Stay Proceedings claiming that pursuant to contract the issues involved in the First Count are referable to arbitration.
The motion to stay proceedings on the First count filed by the defendant is necessarily related to the plaintiff's motion for summary judgment on this count. That is, if the court accepts the defendant's reasoning and stays court proceedings as they relate to this count so that arbitration may proceed then it would not be appropriate for the court to consider let alone grant the plaintiff's motion for summary judgment. This would be so even if the court left to its own devices believed the plaintiff as a matter of law would have been entitled to prevail on a motion for summary judgment absent the defendant's right to demand arbitration.
The first count seeks a declaratory judgment concerning the Deferred Compensation Agreement between the parties — or to put the question more exactly seeks a judgment from the court that one provision of the agreement must be excised. That provision states that payments under the agreement will be made under certain circumstances one of which is that the plaintiff attorneys not practice law in Connecticut. The plaintiffs' complaint goes on to say that "with the exception of the provision limiting competition, the Deferred Compensation Agreement is enforceable." At one or another point in its briefs the plaintiffs seem to suggest that the court having decided the excision issue, questions under the Deferred Compensation Agreement would then be ripe for arbitration.
The plaintiffs argue that the portion of the agreement CT Page 8341 providing that their right to receive benefits depends on their not competing with the defendant law firm violates public policy. It is argued that it is in direct conflict with Section 5.6 of the Rules of Professional Conduct, interferes with the rights of clients and people desirous of receiving legal services, and compromises their due process right to practice law. They argue that this important public policy question must be decided not by an arbitrator but by the Superior Court especially since it concerns a question of attorney conduct which makes it uniquely appropriate for judicial decision prior to any referral to arbitration.
(1)
The deferred compensation agreement contains in paragraph 7 the following language:
 Any controversy or claim arising of or relating to this agreement or breach thereof shall be settled by arbitration. . .
A party can be compelled to arbitrate only to the extent that he has agreed to do so Marsala v. Valve Corp.of America, 157 Conn. 362, 365 (1969). However the just referred to language makes clear that this is a so-called broad arbitration clause. A clause using language such as "arising out of", "related to" the underlying agreement is viewed as having a broad scope. See generally cases and discussion in "Cause of Action to Enforce Right to Arbitration Pursuant to Contract Clause Requiring Arbitration", 29 COA 231, 257, Section 8., cf Two SistersInc. v. Gosch Co., 171 Conn. 493, 497 (1976). The Second Circuit has said: "Where the arbitration clause is broad we have directed courts to compel arbitration whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract." Peerless Importers Inc.v. Local One, 903 F.2d 924, 927 (CA 2, 1990).
The plaintiffs refer to Conn. Union of TelephoneWorkers v. SNETCO, 148 Conn. 192 (1961) and the language at page 192 which states that "whether a dispute is an arbitrable one is a legal question for the court rather than for the arbitrators, in the absence of a provision in the agreement giving arbitrators such jurisdiction", id at CT Page 8342 page 198. Thus they argue the legality of an agreement is an issue for the court unless the parties specifically provide for arbitration of that issue. From this there is an assumed connection then to the next proposition that any arbitration clause as a matter of law must be interpreted to exclude from arbitration issues of public policy.
Conn. Union of Telephone Workers however did not involve a broad arbitration clause but a so-called narrow arbitration clause. The quote cited above and referred-to in plaintiff's brief does not include the immediate sentence following it.
 "Whether a dispute is an arbitrable one is a legal question for the court rather than for arbitrators in the absence of a provision in the agreement giving arbitrators such jurisdiction. The parties may manifest such a purpose by an express provision or by the use of broad terms. . ." (emphasis added)
Exactly. The arbitration clause here does use broad terms just as the cases cited in Connecticut Union did, which to that court indicated the parties manifested a purpose that questions of arbitrability should be left to the arbitrators, see International Brotherhood v. Trudon Platt Motor Lines Inc., 146 Conn. 17, 20, Liggett v.Torrington Building Co., 114 Conn. 425, 430. Also seeApplication of Affiliated Coat Apron Supply Con., 153 N.Y.S.2d 970, 975 (1956) also cited in Connecticut Union ofTelephone Workers.
There is no question here then that the issues raised and the claims made by the plaintiffs in the First Count arise out of and are related to the Deferred Compensation Agreement of which the arbitration clause is a part.
(2)
In their opposition to the defendant's motion to stay court proceedings which will allow the arbitration agreed upon by both parties to proceed the plaintiffs make no claim that the arbitration agreement should be declared void because of fraud, misrepresentation or duress, Dewartv. Northeastern Gas Transmission Co., 140 Conn. 446. In fact if CT Page 8343 the court performs the excision they request the plaintiffs suggest the matter could then be submitted to arbitration cf Two Sisters Inc. v. Gosch Co., 171 Conn. at p. 498. Neither do the plaintiffs claim that arbitration should not go forward because a particular arbitrator scheduled to hear this matter is partial or has somehow colluded with the defendant, McCloskey Co. v. Arbitration Association,175 Conn. 475, 476 (1978).
As indicated the plaintiffs argue a "public policy" exception to the strong position of the courts in favor of arbitration where the parties have agreed to it, Garrity v.McCoskey, 223 Conn. 1, 4-5 (1992). It has been said that the courts favor arbitration because it is "designed to avoid litigation and secure prompt settlement of disputes."John A. Errichetti Associates v. Boutin, 183 Conn. 481, 488
(1981). In fact the Garrity court viewed arbitration as "an efficient and economical system of alternative dispute resolution" 223 Conn. at pp 4-5.
The thrust of the plaintiffs argument is that even though the parties have otherwise agreed to arbitration, where a portion of the agreement violates public policy a court should, prior to the submission of the matter to arbitration, excise the offending portion of the agreement because it is not the business of the arbitrator to decide such a matter.
In Success Centers Inc. v. Huntington Learing CentersInc., 223 Conn. 701, 772-773 (1992) where the plaintiff sought to enjoin the arbitration provisions of a contract in a suit on a CUPTA violation the court said:
 "By agreeing to the arbitration clause . . . . the plaintiff agreed to submit to arbitration any
controversy or claim arising out of or relating to the agreements or any breach thereof, including any claim that the agreements are illegal or void as against public policy. Nor has the plaintiff directed our attention to any authority that prohibits the arbitration of CUPTA or public policy claims."
In deciding the plaintiffs' opposition to the motion to stay in this case it is useful to compare SuccessCT Page 8344Centers Inc. with New Haven v. AFSCME Council 15, Local530, 208 Conn. 411 (1988). That case was an appeal from a judgment denying an application to review an arbitration award. The court recognized what it called "two narrow exceptions grounded in public policy to the broad authority that arbitrators are ordinarily permitted to exercise over unrestricted submissions." id at page 416. The court went on to say arbitrators exceed their authority when they address the constitutional validity of a statute. The other exception is that arbitrators exceed their authority if the award orders a party to engage in illegal conduct or conduct which is in clear violation of public policy. Even in such situations the court went on to hold that "public policy exceptions to arbitral authority should be narrowly construed" id at page 417, citing International Union, AFL-CIOv. Missions Inc., 484 U.S. 29, 44, 98 L.Ed.2d 286 (1987).
Success Centers Inc. did not even mention New Haven v.AFSCME for the very good reason that the latter case involved principles to be applied on review of an awardafter arbitration; Success Centers Inc. involved a request to enjoin arbitration that had not yet occurred. Given the policy favoring arbitration previously referred to what the court appears to be saying is that is not desirable to permit the invention of counsel and judicial creativity to invent broad areas of public policy concerns which could be used as a device to forestall the enforcement of broad arbitration clauses. The remedy of the party advancing a public policy claim at least in most cases is an appeal from the arbitrator's award if in fact he or she even has to reach the public policy claim and having done so decides it incorrectly. Even a case which used New Haven v. AFSCME
and its public policy language to deny a motion to compel arbitration confined the considerations of public policy to situations where the public policy in issue involved substantial rights embodied in the detailed CUPTA statute which thereby expressed a strong public policy, Bill ButlerAssociates v. New England Savings Bank, 42 Conn. Sup. 198,200-201 (1992). It is open to question how viable this case is after Success Centers Inc.. In any event cases which have denied motions to compel arbitration on public policy grounds, thus not staying any court proceedings, have involved situations like Bill Butler Associates where plaintiffs have been suing to enforce in the courts substantive rights embodied in all-encompassing regulatory CT Page 8345 statutes providing a broad range of relief. In this situation some courts have held such rights must be judicially enforced. In Harris v. Iannacone, 487 N.Y.S.2d 562,564 (1985) the court noted various areas of the law which have been held to be non-arbitrable despite the language of the parties' agreement (1) claims under security laws cf Wilko v. Swan, 346 U.S. 427 (1953); (2) claims under antitrust law cf American Safety EquipmentCorp. v. J.P. Maguire Co., 391 F.2d 821 CEA 2, 1968,Stending International Inc. v. B B Italia, 633 F. Sup. 27
(SD NY, 1986), Matter of Aimcee Wholesale Corp. , 289 N.Y.S.2d 968
and (3) discrimination claims cf Labib v. Younan,755 F. Sup. 125 (D.N.J., 1991).
In Wertheim Co. v. Halpert, 421 N.Y.S.2d 876 (1979) the plaintiff had brought a discrimination on claims under Title 7 in federal court. The employer applied in state court to compel arbitration which was granted. The Court of Appeals reversed holding that allowing the employer to pursue arbitration "risks chilling the exercise of the statutory right and poses the possibility of inconsistent verdicts" id at page 877 arising out of the arbitration proceeding and the suit in federal court. None of these considerations are involved here.
In child custody cases agreements to arbitrate will not be enforced although the enforcement of a specific statutory scheme is not involved but this is a special type of case, see Nestel v. Nestel, 331 N.Y.S.2d 241, 243 (1972). The Nestel court was concerned with the particular problems raised by cases involving children and their testimony.
In general then "public policy" invocations to forestall arbitration have usually been raised in cases where there is a general statutory scheme which is the subject of or related to the claim sought to be arbitrated. In addition to cases already cited see also S.A. MureracaoDa Trinidate-Samitri v. Utah International Inc., 576 F. Sup. 566
(SD NY, 1984), Mendelsohn v. A P Catering Corp. ,473 N.Y.S.2d 481 (1984), Lawrence v. Comprehensive BusinessService Co., 833 F.2d 1159 (CA 5, 1987).
Although not controlling federal decisions in this area are of importance since the Federal Arbitration Act like our statute favors arbitration. Commenting on a CT Page 8346 leading Supreme Court case, Mitsubishi Motors Corp. v.Soler Chrysler-Plymouth Inc., 473 U.S. 614, 87 L.Ed.2d 444
(1985), the District of Columbia Court of Appeals said inNational Railroad Passenger Corp. v. Consolidated RailCorp, 892 F.2d 1066, 1070 (1990) the following:
 "It is clear from the Mitsubishi decision itself that a general public policy is not the type of external legal constraint that can make an arbitration clause unenforceable. The Supreme Court did not remotely suggest that some substantive issues are inherently outside the ambit of arbitration, but only that an arbitrator cannot decide an issue if there is a limitation in positive law — statutory or of course contractual — upon his (sic) power to do so."
The court will grant the motion to stay on the grounds that the agreement provides for arbitration. Therefor the court denies the plaintiffs' motion for summary judgment as to the First count which requests that the so-called non-competition clause of the Deferred Compensation Agreement is violative of public policy and therefore it is not a matter for consideration by the arbitrator.
The defendant in pressing its motion to stay argued that the "public policy" argument need not be addressed by the court since the arbitrator could decide the matter on any one of four mentioned issues without having to even reach the "public policy" issue. Those issues as set forth by the defendant are (1) the plaintiffs are barred from recovery because of an alleged prior breach of fiduciary duty, (2) one of the plaintiffs was the "architect" of the agreement one of whose clauses he now claims violates public policy, (3) the same plaintiff "blocked" an amendment to the agreement which would have eliminated any issue under the Rules of Professional Conduct and (4) the absence of a severability clause precludes the enforcement of the agreement if the definition of retirement is reformed in the manner suggested by the plaintiff.
The court is not basing its decision on the motion to stay on these just mentioned arguments of the defendants. The first three issues would require an evidentiary hearing or at least give the parties an option to request one since CT Page 8347 the plaintiffs contest the allegations. Some of these issues may be related to the severability claim. In any event since the thrust of the plaintiffs' argument is that the Deferred Compensation Agreement with the retirement provision would render it illegal, the court is not quite so positive as the defendants that the plaintiffs could not sue on what they claim is an illegal bilateral contract despite the absence of a severability clause, seeContracts, Calamari Perillo, 3d ed, Chapter 22, see esp § 22-2 p. 892 and § 22-6 p. 899.
In conclusion the motion to stay is granted and the court having made that decision will not act on the plaintiffs' motion for summary judgment since the matters arising out of or related to the agreement should be referred to the arbitrator.
Corradino, J.