[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 28, 1996
On March 3, 1995, the plaintiffs Canaan Venture Partners, L.P. and twelve other affiliated companies and partnerships (Canaan) filed a six count complaint against the defendant Alan Salzman for actions arising out of his relationship as a general partner in Canaan. On March 6, 1995, Salzman filed an action against Canaan in California Superior Court. By letter dated March 24, 1995, Salzman "demand[ed] binding arbitration" of the two cases pursuant to the Canaan Venture Partners, L.P. Amended and Restated Limited Partnership Agreement. The parties agreed to arbitrate the dispute, and on March 27, 1995, Canaan filed its Statement of Claim in the arbitration proceeding. On March 17, 1995, Judge Karazin entered an order staying the action in this court. On October 16, 1995 the defendant moved to disqualify the plaintiffs' lead counsel, Cahill Gordon Reindel (Cahill) due to a conflict of interest. The defendant included a memorandum of law in support of its motion and an affidavit with exhibits. The plaintiffs filed an objection dated October 30, 1995, with a memorandum of law, an affidavit and exhibits.
The plaintiffs argue that the proper forum for resolution of the motion is before the American Arbitration Association (AAA) proceeding. The plaintiffs first argue that the dispute is arbitrable by the AAA because the clause in the agreement is broad and contains no language limiting the arbitrator's power, this court stayed the superior court action in its entirety and the defendant has not moved to lift the stay, and public policy favors uninterrupted arbitration.
The defendants argue that Connecticut courts will not permit arbitrators to determine issues involving well-defined public policies which can only be determined by reference to the laws and legal proceedings, a policy that is particularly applicable to matters involving attorney disqualification.
"This court has long endorsed arbitration as an alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) New Haven v. AFSCME, Council 15, Local CT Page 1082 530, 208 Conn. 411, 415, 544 A.2d 186 (1988). Connecticut has adopted the positive assurance test in deciding whether a particular dispute should be submitted to arbitration: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. "Board of Education v. Frey, 174 Conn. 578, 582,392 A.2d 466 (1978). "The intention to have arbitrability determined by an arbitrator can be manifested . . . through the use of broad terms to describe the scope of arbitration, such as "all questions in dispute and all claims arising out of the contract." Id., 581.
Salzman demanded arbitration in a letter that referenced one of the partnership agreements in dispute. The agreement provides for arbitration of "[a]ny dispute, controversy or claim arising out of, in connection with, or relating to this Agreement or any breach or alleged breach thereof." (Affidavit of Robert Alessi in Opposition to Defendant's Motion to Disqualify, Exhibits. 7, 8 (Alessi).) The parties then stipulated to stay the action in Connecticut "in its entirety" and in California (Alessi, Exhibits 10, 11). The motion represents that "the parties have agreed to submit to arbitration all of the issues involved in this action."
The language in the agreement and the stipulation are sufficiently broad that it may not be said with positive assurance that this dispute is not covered by arbitration. Furthermore, use of the broad language demonstrated an intention to have the arbitrators make that determination. The defendant argues that the dispute is between Salzman and Cahill, and the parties did not agree to submit this motion to arbitration. The dispute is between Salzman and Canaan, relating to Canaan's choice of counsel to represent it in this suit. Furthermore, the parties agreed to submit issues involved in this action to arbitration, which includes choice of counsel.
The plaintiff argues that Connecticut recognizes an exception to the rule providing that, "[a] court's refusal to enforce an arbitrator's interpretation . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal citations omitted.) New Haven v. AFSCME, supra, 208 Conn. 417;Bill Butler Associates v. New England Savings Bank,
CT Page 108342 Conn. Sup. 198, 201, 611 A.2d 463 (1991). However, "public policy exceptions to arbitral authority should be narrowly construed." New Haven v. AFSCME, supra, 208 Conn. 417. "The public policy defense will not often succeed, particularly if the party using it did not challenge the arbitration process at an earlier stage, such as by moving for a stay of arbitration." Id., n. 6. In granting a motion to stay court proceedings on the ground that issues involving attorney conduct are referable to arbitration, the court held it is not desirable to permit the invention of counsel and judicial creativity to invent broad areas of public policy concerns which could be used as a device to forestall the enforcement of broad arbitration clauses." Kainen Starr v.Siegel, O'Connor, Superior Court, judicial district of Hartford New Britain at Hartford, Docket No. 526200.12 CONN. L. RPTR. 345 (August 22, 1994) (Corradino, J.).
Plaintiff and defendant have provided the court with other authority to support their position. In Bidermann IndustriesLicensing, Inc. v. Aumar N.V., 570 N.Y.S.2d 33, 173 App.Div.2d 401
(1st Dep't, 1991), the court granted a motion to stay arbitration of the issue of disqualification of counsel because the matter is intertwined with overriding public policy considerations. However, a federal court declined to grant preliminary injunctive relief stating, "[w]ere I to do so, this Court would interfere directly in a pending arbitration, to which [the parties] agreed by contract . . . While I have the authority to disqualify the present defendants' counsel in this litigation . . . any order doing so would have only advisory effect upon the arbitrators. Courts do not give advisory opinions. It is for the arbitrators to control their internal procedures, subject only to the very limited post-award remedies conferred by § 10 of the [Federal Arbitration] Act." Wurttembergischef Fire InsuranceCompany v. Republic Insurance Company. No. 86 Civ. 2696-CSH (S.D.N.Y. July 9, 1986); see also Cook v. Chocolate Co. v.Salomon Inc., No. 87 CIV. 5705 (RWS) (S.D.N.Y. Oct. 28, 1988) (declining to review decision by arbitration panel denying request to disqualify defendant's attorney).
This court will not interfere with and interrupt the process of arbitration, which in this case has been ongoing since March. Furthermore, the public policy exception is to be construed narrowly, and pursuant to Kainen Starr v. Siegel, O'Connor,supra, attorney disqualification is not within the scope of the exception. Accordingly, the court declines to decide the motion and refer the issue to the arbitration panel. CT Page 1084
Dean, J.