[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO REOPEN JUDGMENT
CT Page 2685
The marriage between the plaintiff, Jean E. Harker and the defendant John H. Harker was dissolved on November 29, 1989. Incorporated in the divorce decree was a separation agreement dealing with the financial obligation of the parties including alimony. The plaintiff has now moved to reopen the judgment on the grounds of fraud on the part of the defendant. This case originally came to the Litchfield Superior Court by writ, summons and complaint on June 16, 1987. At that time the parties were living apart and there was a court hearing in December of 1987 in regard to payment of mortgages, living expenses, etc.
On or about February 1, 1988, the parties appeared in court and the defendant filed a financial affidavit which was supposed to detail all of the assets and liabilities of the parties as of that date. It was the plaintiff's testimony on the present motion to reopen that her husband was totally in control of all of the finances of the parties and handled all of the financial assets, the acquisition of assets, payment of bills, etc. throughout the marriage and after the separation.
The parties began negotiating a settlement of their divorce case and the plaintiff testified that the settlement negotiations centered around all of the assets on the February 1, 1988 financial affidavit. (Exhibit #1).
The plaintiff further testified that the assets as spelled out on said affidavit are addressed one by one in the final divorce decree and separation agreement incorporated by reference at that time.
An examination of the separation agreement attached to the judgment reveals that Article IV involves the family home at 5 Ledge Lane in New Milford; Article XI referred to the motor vehicles set forth on the February 1, 1988 affidavit; Article XII referred to the boats which are set forth on the February 1, 1988 affidavit; Article XIV refers to the Hoffman estates; Article XVI refers to the PLM transportation partnership; and Article XV refers to the Independent Trust Corporation Retirement account which, in fact, was the K-C IIP Vested Contribution (1,000 shares having a value of $55,000 as reflected on the February 1, 1988 financial affidavit). CT Page 2686
Nowhere on the husband's financial affidavits were there reflected any stock options and furthermore, there was nothing reflected on the husband's financial affidavit that indicated that he had a pension.
The defendant testified at the recent hearing that he has a pension available to him through Kimberly-Clark although he doesn't work there any longer and that he failed to indicate it on the financial affidavit dated February 1, 1988 and it is not on the financial affidavit filed at the time of the divorce. As part of the final judgment, the defendant was ordered to provide the plaintiff and her counsel with a 1988 tax return and the plaintiff was to receive any refund.
In February 1994, the plaintiff was presented with a large tax bill from the State of Wisconsin and found out that the defendant had forged her name on a state tax return in May of 1990 even though the parties were divorced in November 1989. Further investigation by the plaintiff revealed that the defendant had filed in May of 1990, a joint 1988 Federal Tax Return which did not bear a signature of the plaintiff. An examination of the Federal Tax Return indicated that during the year of 1988, the defendant exercised stock options that resulted in him receiving assets worth $244,000.00. The tax return further indicated that the defendant rolled over an IRA having a value of $61,000.00 (see Plaintiff's Exhibit 5) and the initial testimony of the defendant was that he received an additional $39,000.00 as an actual cash disbursement for which he was taxed from the same fund.
The defendant's own language in his written claim for a refund obtained by the plaintiff through the Internal Revenue indicated that "Due to divorce proceedings the return was not filed until after the settlement was agreed upon". The defendant, indeed, waited for the divorce to be settled.
Once the plaintiff had the information in regard to the 1988 income and other assets, she filed a motion dated June 23, 1994 seeking to reopen the judgment because of the defendant's failure to disclose additional assets, additional income, a different severance pay, etc. from Kimberly-Clark which was the basis of the negotiations between the parties.
In the case of Billington v. Billington, 220 Conn. 212 (1991), the burden that the plaintiff has is that (1) there have been no latches or unreasonable delays by the injured party after the fraud CT Page 2687 was discovered; (2) there must be clear proof of the perjury or fraud; and (3) there must be a substantial likelihood that the result of a new trial would be different. The differences betweenBillington and previous cases in regard to reopening a judgmentVarley v. Varley, 180 Conn. 1, 4 (1980); Jucker v. Jucker,190 Conn. 674, 677 (1983) is that the Billington case removed a requirement of diligence in trying to discover and expose a fraud.
The plaintiff did not unreasonably delay after the fraud was discovered. The exhibits in the case indicate that the plaintiff took quick steps in her investigation and once it was complete and she had the federal tax return, she filed the appropriate motions which resulted in the hearing most recently heard.
There is clear proof of fraud that the defendant committed when one examines the exhibits and realizes that the exact reason he failed to file his 1988 tax return was because the divorce was pending. He even filed his 1989 tax return on time (April 15, 1990) because it showed nothing out of the ordinary. Furthermore, the defendant testified that he failed to put his pension on the financial affidavits as well as the $244,000.00 in stock options. These assets were not on the 1988 financial affidavit or the one filed at the time of the divorce.
As far as the fact that the plaintiff has to show that there would be substantial likelihood that the result of the new trial would be different, the plaintiff testified that she never would have agreed to alimony that terminated; and transfer of the assets that she ended up receiving, and sale of the house. It would mean that there would be an additional $244,000.00 worth of assets to divide which turned out to be more than the equity in the home at the time of the divorce. There would have been a pension to divide. Furthermore, the tax return and the testimony seems to indicate that Mr. Harker had a different retirement fund worth $100,000.00 rather than $55,000.00 as reflected on all of his financial affidavits.
The Billington case stands for the proposition that private settlements of financial affairs are a goal that the courts support. That goal requires reasonable settlements that have been knowingly agreed upon. The case talks about the principles of full, frank disclosure, none of which Mr. Harker engaged in. In theBillington case, the wife was led to believe that the family home was worth approximately $225,000.00 when the husband, in fact, had a contract for $380,000.00. This was fraud by non-disclosure which CT Page 2688 is exactly what has happened in the Harker case. Mr. Harker knew that he had stock options that he could have exercised and which he did exercise prior to the divorce. He had an obligation to disclose those assets. His claim that the money was spent by the time the divorce took place is unfounded. To take such a position now would be no different than a man who hides $1,000,000.00 and is able to disburse it within a few months of a divorce. He then comes into court and suggests that there is not much you can do about it because it's all gone anyway. The additional assets should have been part of the consideration in the settlement matter. The assets of the marriage are still intact and can be the subject of further negotiation. The house is there, the plaintiff is still receiving alimony; the defendant has the same pension; boats, real estate in Wisconsin.
For the reasons stated herein, the plaintiff's motion to reopen the decree of dissolution of November 29, 1989 is granted. In view of the reopening of the judgment, the defendant is restrained from transferring or disposing of any assets except funds necessary for normal living costs or funds to satisfy court orders until further order of the court.
PICKETT, J.